DMP:FJN/JPL/NDB/RMP
F. #2019R00935/OCDETF #NY-NYE-874H

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                    23-CR-41 (DLI)

- against -

MOHAMMAD IBRAHIM BAZZI,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A PRETRIAL CONFERENCE
<u>PURSUANT TO THE CLASSIFIED INFORMATION PROCEDURES ACT</u>

BREON PEACE
United States Attorney
Eastern District of New York

Francisco J. Navarro
Jonathan P. Lax
Nomi D. Berenson
Robert M. Pollack
Assistant United States Attorneys
(Of Counsel)

i

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL POSTURE........................................ 2

BACKGROUND ON CIPA ............................................................................................... 6

   I.   The Classified Information Procedures Act.................................................................. 6

   II.   Pretrial Conferences, Protective Orders, and Discovery under CIPA............................ 6

      A.   Pretrial Conferences ............................................................................................ 6

      B.   Protective Orders ................................................................................................. 7

      C.   Discovery of Classified Information by the Defendant........................................ 7

   III.   Notice of Defendant's Intent to Disclose and Pretrial Evidentiary Rulings ................ 11

      A.   The Requirement to Provide Notice of Disclosure.......................................... 12

      B.   The Pretrial Hearing on Disclosure .................................................................. 13

      C.   Substitution in Lieu of Disclosure .................................................................... 14

   IV.   Other Relevant CIPA Procedures............................................................................. 15

      A.   Interlocutory Appeal ......................................................................................... 15

      B.   Rules Governing Introduction of Classified Information................................... 15

      C.   Security Procedures .......................................................................................... 16

THE COURT SHOULD HOLD A CIPA PRETRIAL CONFERENCE................................... 17

CONCLUSION................................................................................................................ 19

PRELIMINARY STATEMENT

The defendant, Mohammad Ibrahim Bazzi, is charged in a three-count Indictment with conspiracy to conduct unlawful transactions involving a Specially Designated Global Terrorist ("SDGT"), in violation of 50 U.S.C. §§ 1705(a) and 1705(c) (Count One); attempting to conduct unlawful transactions involving an SDGT, in violation of 50 U.S.C. §§ 1705(a) and 1705(c) (Count Two); and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Three).   See Indictment (ECF No. 1) (Jan. 27, 2023).

The government has determined that this case may implicate classified information.

Accordingly, the government respectfully submits this memorandum of law to apprise the Court of the applicability of the Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA"), to matters relating to classified information that may arise in connection with this case, both before and during trial, and in support of the government's motion for a pretrial conference, pursuant to Section 2 of CIPA, to consider such matters.   The government respectfully requests that the Court either convert the August 30, 2023 status conference to a CIPA Section 2 status conference, or schedule the next status conference to be such.

1

## FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The charges arise from an investigation of a scheme and conspiracy to evade, avoid and violate the regulations, prohibitions and licensing requirements prohibiting the transacting of business with or for the benefit of Bazzi upon his designation as an SDGT.   On May 17, 2018, the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") designated the defendant Bazzi—a dual Lebanese and Belgian citizen born in Bent Jbeil, Lebanon—as an SDGT.   Indictment ¶¶ 1, 20.   According to that designation, Bazzi "was designated for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, Hizballah," a designated foreign terrorist organization.   Bazzi "is a key Hizballah financier who has provided Hizballah financial assistance for many years and has provided millions of dollars to Hizballah generated from his business activities" in Belgium, Lebanon, Iraq and throughout West Africa.   Id. ¶ 20.

Bazzi's codefendant, Talal Khalil Chahine, is a dual United States and Lebanese citizen who, for many years, lived in Michigan and owned and operated numerous restaurants. In 2006, Chahine was charged (in an unrelated case) with tax crimes and he fled from the United States.   See id. ¶ 2; see also United States v. Chahine, 06-CR-20248 (SFC) (E.D. Mich.).[1] Following Chahine's flight from justice, his restaurants closed and his properties became encumbered by tax liens.   See id. ¶ 16.

---

[1] Chahine was also subsequently charged in two additional cases.   See United States v. Chahine, et al., 07-CR-20327 (AJT) (E.D. Mich.) (charges relating to a bribery and extortion conspiracy in which federal immigration benefits were awarded to illegal aliens in exchange for money); United States v. Chahine, et al., 07-CR-20156 (AC) (E.D. Mich.) (charges relating to marriage and naturalizing fraud scheme involving a former restaurant employee turned corrupt U.S. government official).   Chahine remains a fugitive on all three of these cases, as well as this case.

Shortly thereafter, Bazzi and Chahine sought to reinvest in the closed restaurants through an intermediary, who would be the nominal owner and share profits with, inter alia, Bazzi and Chahine.   This scheme was designed to conceal Bazzi's and Chahine's interest as the true owners in the properties.   See id. ¶¶ 17–18.

Bank records and public property records corroborate and confirm that Bazzi purchased at least one of Chahine's former restaurant properties by wiring money to an escrow account in the United States, which funds were subsequently used to facilitate the purchase by the intermediary.   See id. ¶ 19.

After OFAC designated Bazzi as an SDGT in May 2018, Bazzi and Chahine sought to sell the property and secretly transfer the proceeds of the sale out of the United States to Bazzi and Chahine in Lebanon, which transfers were generally prohibited by U.S. law.   See id. ¶¶ 21–22.

On October 18, 2018, the intermediary met with one of Bazzi's and Chahine's associates ("Co-Conspirator-1").   The meeting was covertly recorded and observed by federal agents.   The intermediary and Co-Conspirator-1 discussed the efforts to sell the restaurant property and send the proceeds to Bazzi and Chahine, as well as the fact that sending money to them would likely be traceable and illegal because Bazzi was an SDGT.   See id. ¶ 23.

On October 19, 2018, the restaurant was sold for approximately $905,000.   See id. ¶ 24.   On December 5, 2018, Co-Conspirator-1 contacted the intermediary by text message about the status of the sale and they discussed the transfer of the proceeds.   Co-Conspirator-1 informed the intermediary that Bazzi and Chahine agreed that Chahine should be paid first.   On January 10, 2019, at Bazzi's request, Co-Conspirator-1 contacted the intermediary by text

message and proposed that money be sent to Bazzi indirectly by wiring the money to a company in China that would pass the money through to Bazzi.

On April 26, 2019, the intermediary spoke with both Bazzi and Chahine via telephone.   According to a recording of the conversation, the intermediary confirmed that s/he sold the restaurant property for $905,000, and Bazzi, Chahine, and the intermediary discussed how to transfer money from the sale to Bazzi and Chahine without the transfer being detected by law enforcement authorities.   To conceal the true nature of the transaction from authorities, Bazzi suggested that they could send the money to pass-through companies that would issue sham purchase agreements.   Specifically, Bazzi proposed sending the money to a purported Chinese restaurant equipment supplier (to create the false appearance that it was for the purchase of restaurant equipment) or to a purported Lebanese real estate broker (to create the false appearance that it was for the purchase of a home).   At the time, they settled on the Chinese supplier scheme, and Bazzi offered to mail a sham invoice to the intermediary.   See id. ¶ 25.

On May 8, 2019, the intermediary received an email message from an associate of Bazzi's, with the subject line "proforma invoi[c]e" and no message body.   The email included an attachment, that appeared to be a "pro forma invoice" dated April 22, 2019, purportedly issued by a company in Beirut, Lebanon billing $860,000 for "Entrance Fee[s]" for 25 "Branches" in the United States.   The invoice also contained wiring instructions to transfer the funds to Lebanon.   See id. ¶¶ 26–27.

On May 23, 2019, the intermediary spoke with both Bazzi and Chahine via telephone.   According to a recording of the conversation, Bazzi and Chahine explained that they abandoned the Chinese equipment supplier scheme and, instead, sent an invoice from a sham Lebanese restaurant franchisor, purporting to allow the company the intermediary controlled on

4

Bazzi and Chahine's behalf to become a franchisee in various U.S. regions.   The intermediary expressed concern to Bazzi and Chahine about Bazzi's status as a SDGT, and Bazzi reassured the intermediary that Bazzi's name was not contained anywhere in the paperwork, thus, concealing his involvement in the transaction and creating the false impression that the anticipated wire transfer was a legitimate commercial transaction unrelated to Bazzi.   See id. ¶ 32.

Bazzi was arrested by Romanian authorities on February 24, 2023 upon his arrival in Romania from Lebanon.   Following proceedings in Romania, Bazzi was extradited to the United States and arraigned on the Indictment by the Honorable Peggy Kuo, United States Magistrate Judge for the Eastern District of New York, on April 26, 2023.

The government has made two initial productions of non-classified discovery. See ECF Nos. 13 and 17.

## BACKGROUND ON CIPA

When a case may implicate classified information, it is the government's practice to provide the Court with a detailed description of the procedures mandated by CIPA for protecting such classified information.

I.      The Classified Information Procedures Act

"CIPA, which establishes certain procedures for the handling of classified information in criminal cases, is designed 'to protect[ ] and restrict[ ] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'"   United States v. Abu-Jihaad, 630 F.3d 102, 140 (2d Cir. 2010) (quoting United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008)); see also In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 115 (2d Cir. 2008) ("CIPA establishes rules for the management of criminal cases involving classified information.").   CIPA defines "[c]lassified information" as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security."   18 U.S.C. App. 3, § 1(a).

II.     Pretrial Conferences, Protective Orders, and Discovery under CIPA

A.      Pretrial Conferences

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution."   18 U.S.C. App. 3, § 2.   After such a motion is filed, the district court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]."   Id.

B. <u>Protective Orders</u>

Section 3 of CIPA requires the Court, upon the request of the United States, to issue an order "to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case. . . ." 18 U.S.C. App. 3, § 3. The key Senate Report on CIPA, issued by the Senate Committee on the Judiciary, provides that a protective order may include, but need not be limited to, provisions:

> (1) prohibiting the disclosure of the information except as authorized by the court; (2) requiring storage of material in a manner appropriate for the level of classification assigned to the documents to be disclosed; (3) requiring controlled access to the material during normal business hours and at other times upon reasonable notice; (4) requiring the maintenance of logs recording access by all persons authorized by the court to have access to the classified information in connection with the preparation of the defense; (5) requiring the making and handling of notes taken from material containing classified information; and (6) authorizing the assignment of government security personnel and the provision of government storage facilities.

S. Rep. No. 96-823, at 6, <u>reprinted in</u> 1980 U.S.C.C.A.N. 4294, 4299 (1980).

C. <u>Discovery of Classified Information by the Defendant</u>

Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove." 18 U.S.C. App. 3, § 4.

Like Rule 16(d)(1) of the Federal Rules of Criminal Procedure, Section 4 of CIPA provides that the United States may demonstrate that the use of such alternatives is warranted through an <u>in camera</u>, <u>ex parte</u> submission to the Court, and the Second Circuit has repeatedly

affirmed district court decisions entering protective orders based on such submissions.   See, e.g., United States v. Al-Farekh, 956 F.3d 99, 107 (2d Cir. 2020) (noting that both CIPA Section 4 and Federal Rule of Criminal Procedure 16(d)(1) "'authorize ex parte proceedings' and that a 'district court acts well within its discretion in reviewing [CIPA] submissions ex parte and in camera'") (internal citations omitted); Abu-Jihaad, 630 F.3d at 142-143 (recognizing that "a district court's decision to conduct ex parte hearings manifests no abuse of discretion"); Aref, 533 F.3d at 81 ("When the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." (internal quotation marks omitted)).

District courts within the Second Circuit have universally and uniformly upheld the use of ex parte filings and in camera proceedings in CIPA Section 4 motions.   See, e.g., United States v. Wang, No. 22-CR-230, ECF No. 35 (E.D.N.Y. Aug. 25, 2023) (Brodie, J.); United States v. Chudhary, No. 20-CR-135, ECF No. 47 (E.D.N.Y. Apr. 2, 2021) (Amon, J.); United States v. Kandic, No. 17-CR-449, ECF No. 41 (E.D.N.Y. Jan. 17, 2019) (Garaufis, J.); United States v. Guzman Loera, No. 09-CR-466, ECF Nos. 228 and 681 (E.D.N.Y. May 15 and Nov. 5, 2018) (Cogan, J.); United States v. Shahnaz, No. 17-CR-690, ECF No. 24 (E.D.N.Y. Aug. 8, 2018) (Seybert, J.); United States v. Zhong, No. 16-CR-614, ECF No. 70 (E.D.N.Y. Sept. 6, 2017) (Irizarry, J.); United States v. Lin, No. 15-CR-601, ECF No. 71 (E.D.N.Y. Apr. 6, 2017) (Irizarry, J.); United States v. Isa, No. 11-CR-819, ECF No. 65 (E.D.N.Y. Sept. 19, 2016) (Mauskopf, J.); United States v. Al Farekh, No. 15-CR-268, ECF No. 59 (E.D.N.Y. Aug. 23, 2016) (Cogan, J.); United States v. Velentzas, No. 15-CR-213, ECF No. 54 (E.D.N.Y. Aug. 10, 2016) (Johnson, J.); United States v. Harun A Hausa, No. 12-CR-134, ECF No. 90 (E.D.N.Y. Mar. 26, 2016) (Cogan, J.); United States v. Medunjanin, No. 10-CR-019, ECF No. 172 (E.D.N.Y. Feb. 22, 2012) (Dearie,

J.); see also United States v. Saipov, No. 17-CR-722, 2019 WL 5558214, at *7 (S.D.N.Y. Oct. 29, 2019) (Broderick, J.); United States v. Schulte, No. 17-CR-548, 2019 WL 3764662, at *7 (S.D.N.Y. July 22, 2019) (Crotty, J.); United States v. Chi Ping Ho, No. 17-CR-779, 2018 WL 6082514, at *4 (S.D.N.Y. Nov. 21, 2018) (Preska, J.); United States v. Ng Lap Seng, No. 15-CR-706, 2017 WL 2715213, at *2 (S.D.N.Y. June 22, 2017) (Broderick, J.); United States v. Mostafa, No. 04-CR-356, ECF No. 233 (S.D.N.Y. Jan. 17, 2014) (Forrest, J.); United States v. al Fawwaz, et al., No. 98-CR-1023, ECF No. 1317 (S.D.N.Y. Sep. 24, 2013) (Kaplan, J.); United States v. El-Hanafi et al., No. 10-CR-162, ECF No. 94 (S.D.N.Y. Feb. 24, 2012) (Wood, J.).

"CIPA 'overlays the framework appearing in Fed. R. Crim. P. 16, which itself authorizes district courts to restrict discovery of evidence in the interest of national security.'" Velentzas, 2016 WL 4250304, at *2 (quoting United States v. Zazi, No. 10-CR-60 (JG), 2011 WL 2532903, at *1 (E.D.N.Y. Jun. 24, 2011)); see also Aref, 533 F.3d at 78.   Indeed, CIPA's legislative history makes clear that the Court may consider national security interests in determining whether to deny, restrict, or defer discovery.   See S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980) (citing "the protection of information vital to the national security" as one consideration justifying limitations on discovery); see also Abu-Jihaad, 630 F.3d at 140 (making clear that district courts have the power under Federal Rule of Criminal Procedure 16(d)(1) "to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security" (quoting United States v. Stewart, 590 F.3d 93, 130 (2d Cir. 2009))); Aref, 533 F.3d at 78 (same).

As the Second Circuit has observed, "CIPA does not itself create a government privilege against the disclosure of classified information; it presupposes one."   Stewart, 590 F.3d at 130.   "The privilege it presupposes has its origins in the common-law privilege

against disclosure of state secrets . . . which 'allows the government to withhold information from discovery when disclosure would be inimical to national security.'"   Abu-Jihaad, 630 F.3d at 140-41 (internal citations omitted, quoting Zuckerbraun v. Gen. Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991)).   "CIPA's framework for nondisclosure provides a means for applying the state-secrets privilege to classified information which, in ordinary circumstances, would be discoverable.   Proper application of that privilege requires balancing of the government's need to protect national security with the right of a defendant to mount a full defense."   United States v. Boulos, No. 13-CR-612 (ENV), 2015 WL 502170, at *1 (E.D.N.Y. Feb. 3, 2015) (internal citations omitted).

The application of the government's privilege against disclosure of classified information is a multi-step process.   "First, the district court must determine whether the material in dispute is discoverable, and if so, whether the state-secrets privilege applies."   Stewart, 590 F.3d at 131.   If the material in dispute is discoverable, "the state-secrets privilege applies if '(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'"   Abu-Jihaad, 630 F.3d at 141 (quoting Aref, 533 F.3d at 80). "If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, i.e., useful to counter the government's case or to bolster a defense."   Aref, 533 F.3d at 80 (internal quotation marks omitted).

In determining whether deletion or substitution of classified information is appropriate, a court must balance the government's national security interest against the

10

defendant's right to present his defense.   For example, under CIPA, a court may permit the government to produce exculpatory or helpful information "in a form that will preserve its sensitivity," including summaries that omit classified information that is "not helpful to the defense." Al Farekh, 2016 WL 4444778, at *2-3; see also United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989) ("a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'").   The fact that defense counsel possesses a security clearance does not itself entitle counsel to receive classified information in discovery.   Indeed, as the Second Circuit has recently recognized, "[n]othing in the text of § 4 limits the District Court's authority to review classified information ex parte only where defense counsel lacks a security clearance." United States v. Al-Farekh, 956 F.3d 99, 107 (2d Cir. 2020); see also United States v. Babafemi, No. 13-CR-109 (JG), 2014 WL 1515277, at *3 (E.D.N.Y. Apr. 18, 2014) ("A person may have access to classified information provided that . . . the person has a need-to-know the information.")); Zazi, 2011 WL 2532903, at *3 (same); see also United States v. Libby, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses.").

III.   Notice of Defendant's Intent to Disclose and Pretrial Evidentiary Rulings

There are three critical pretrial steps in the handling of classified information under CIPA if any such information is required to be provided to the defendant through discovery.   First, the defendant must, pursuant to CIPA Section 5(a), specify in detail the precise classified information he reasonably expects to disclose at trial.   Second, the Court, upon motion of the government, shall hold a hearing pursuant to CIPA Section 6(a) to determine the use,

relevance, and admissibility of the proposed evidence.   Third, following the CIPA Section 6(a) hearing and formal findings of admissibility by the Court, the United States may move to substitute an admission of relevant facts or summaries for classified information that the Court rules admissible.

A.    The Requirement to Provide Notice of Disclosure

The linchpin of CIPA is Section 5(a), which requires a defendant who intends to disclose (or cause the disclosure of) classified information to provide timely pretrial written notice of his intention to the Court and the government.   Section 5(a) expressly requires that such notice "include a brief description of the classified information," and the leading case under Section 5(a) holds that such notice "must be particularized, setting forth specifically the classified information which the defendant reasonably believes to be necessary to his defense." United States v. Collins, 720 F.2d 1195, 1199 (11th Cir. 1983) (emphasis added); see also United States v. Smith, 780 F.2d 1102, 1105 (4th Cir. 1985) (en banc).   This requirement applies to documentary exhibits, as well as to witness testimony, regardless of whether that testimony is anticipated to be elicited on direct or cross-examination.   See United States v. Hitselberger, 991 F. Supp. 2d 91, 95 (D.D.C. 2013) (CIPA's disclosure requirement applies "regardless of the witness or the document through which that information is to be revealed.") (quoting United States v. Poindexter, 725 F. Supp. 13, 33 (D.D.C. 1989)).

If a defendant fails to provide a sufficiently detailed notice far enough in advance of trial to permit the implementation of CIPA procedures, Section 5(b) authorizes the Court to "preclude disclosure of any classified information." 18 U.S.C. App. 3, § 5(b); see also United States v. Badia, 827 F.2d 1458, 1464-66 (11th Cir. 1987) (affirming order precluding defendant from disclosing classified information at trial because defendant failed to comply with notice

12

requirements of CIPA Section 5).   Similarly, if the defendant attempts to disclose at trial

classified information that is not described in his Section 5(a) notice, preclusion is the

appropriate remedy under Section 5(b) of CIPA.   See United States v. Pappas, 94 F.3d 795, 799

(2d Cir. 1996) ("[A] defendant shall not disclose classified information 'in connection with a

trial or pretrial proceeding' until the required notice has been given."); United States v. Smith,

780 F.2d 1102, 1105 (4th Cir. 1985) ("defendant is forbidden from disclosing any such

information absent the giving of notice"); see generally United States v. North, 708 F. Supp. 399

(D.D.C. 1988).

B.     The Pretrial Hearing on Disclosure

Prior to trial, pursuant to Section 6(a) of CIPA, upon motion of the government,

the Court must hold a hearing "to make all determinations concerning the use, relevance, or

admissibility of classified information that would otherwise be made during the trial or pretrial

proceeding."   18 U.S.C. App. 3, § 6(a).   The statute expressly provides that if the Section 6(a)

motion is filed before trial or the relevant pretrial proceeding, "the court shall rule [on the use,

relevance, or admissibility of the classified information at issue] prior to the commencement of

the relevant proceeding."   Id. (emphasis added).

Section 6(b) of CIPA requires that before any hearing is conducted under Section

6(a), the United States must notify the defendant of the hearing and identify the classified

information at issue.   If the information was not previously made available to the defendant, the

United States may, with the Court's approval, provide a generic description of the material to the

defendant.   Thus, as Congress recognized in enacting CIPA, "the Government would not have to

disclose the identity of an undercover intelligence agent not previously disclosed to the

defendant; instead, the Government would describe the information as 'the identity of an

undercover intelligence agent' if this meets with court approval."   S. Rep. No. 96-823, at 6,

reprinted in 1980 U.S.C.C.A.N. 4294, 4301 (1980).

At the Section 6(a) hearing, the Court hears the defense proffer and the arguments

of counsel, then rules whether the classified information identified by the defense is relevant

under Rule 401 of the Federal Rules of Evidence.[2]   Smith, 780 F.2d at 1106; see generally

Yunis, 867 F.2d at 622.   The Court's inquiry does not end there, however, for under Rule 402 of

the Federal Rules of Evidence, "[n]ot all relevant evidence is admissible at trial."   Id.   The

Court must also determine whether the evidence is cumulative, "prejudicial, confusing, or

misleading," so that it should be excluded under Rule 403 of the Federal Rules of Evidence.

United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984).   At the conclusion of the Section 6(a)

hearing, the Court must state in writing the reasons for its determination as to each item of

classified information.

C.      Substitution in Lieu of Disclosure

In the event that the Court rules that one or more items of classified information

are admissible, the United States has the option of proposing a "substitution" for the classified

information at issue, pursuant to Section 6(c) of CIPA.   18 U.S.C. App. 3, § 6(c).   The United

States may move for permission to provide the defense either a substitute statement admitting

relevant facts that the classified information would tend to prove, or substitute a summary of the

classified information that would otherwise be disclosable.   See In re Terrorist Bombings, 552

F.3d at 116.   The Court must grant the motion for substitution "if it finds that the [substituted]

---

[2]      CIPA does not change the "generally applicable evidentiary rules of admissibility."   United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984); accord Babafemi, 2014 WL 1515277, at *1.   Rather, CIPA alters the timing of rulings on admissibility, requiring them to be made before trial.   United States v. Poindexter, 698 F. Supp. 316, 318 (D.D.C. 1988); accord Zazi, 2011 WL 2532903, at *1; Smith, 780 F.2d at 1106.

statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."   Id.

If the Court determines that the item of classified information at issue is relevant and admissible and denies the government's motion for substitution, Section 6(e)(1) of CIPA permits the government to object to the classified information's disclosure.   18 U.S.C. App. 3, § 6(e)(1).   In such cases, the Court "shall order that the defendant not disclose or cause the disclosure of such information."   Id.   Section 6(e) then sets forth a sliding scale of remedies that the Court may impose in such a case.   Id. at § 6(e).

IV.   Other Relevant CIPA Procedures

A.   Interlocutory Appeal

Section 7(a) of CIPA provides for an interlocutory appeal by the United States from any decision or order of the trial judge "authorizing the disclosure of classified information," imposing sanctions on the United States "for nondisclosure of classified information," or for "refusing a protective order sought by the United States to prevent the disclosure of classified information."   18 U.S.C. App. 3, § 7(a).   The term "disclosure" relates both to information which the court orders the United States to divulge to the defendant as well as to information already possessed by the defendant which he or she intends to make public. Section 7(b) requires the Court of Appeals to give expedited consideration to any interlocutory appeal filed under subsection (a).   Id. § 7(b).

B.   Rules Governing Introduction of Classified Information

In order to prevent "unnecessary disclosure" of classified information, section 8(b) permits the Court to order admission into evidence of only a part of a writing, recording or photograph.   Alternatively, the Court may order into evidence the entire writing, recording or photograph with all or part of the classified information contained therein excised.   Excision of

15

such classified information may not be authorized, however, if fairness requires that the whole document, recording or photograph be considered.

Section 8(c) establishes a procedure for addressing the problems that may emerge during the taking of testimony from a witness who possesses classified information not previously found to be admissible.   If the defendant knows that a question or a line of inquiry would result in disclosure of classified information, CIPA mandates that he give the United States immediate notice under Section 5 of the Act; Section 8(c), in effect, serves as a supplement to the Section 6(a) procedures, addressing circumstances that might not have been anticipated in advance of the taking of testimony.   Thus, upon objection of the United States to a defense question or line of inquiry not covered in a Section 6(a) proceeding, the Court must take suitable action to avoid the improper disclosure of classified information by a witness.

C.    Security Procedures

Section 9 of CIPA required the Chief Justice of the United States to prescribe security procedures for the protection of classified information in the custody of federal courts; such procedures were originally promulgated in 1981 and have been in place, with revisions, ever since.   See "Revised Security Procedures Established Pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information" (reprinted following 18 U.S.C. App. 3, § 9).

## THE COURT SHOULD HOLD A CIPA PRETRIAL CONFERENCE

The defendant is charged with three crimes arising from his efforts to evade anti-terrorism sanctions notwithstanding his designation as an SDGT.   Due to the nature of these charges, the United States anticipates that issues relating to classified information may arise in connection with this prosecution.   Specifically, classified material may exist that could be subject to disclosure in advance of trial under applicable rules, statutes, and case law.   The disclosure of such material would raise issues of national security that the Court should address pursuant to the CIPA procedures set forth above.

Accordingly, the United States respectfully requests that the Court schedule a pretrial conference pursuant to Section 2 of CIPA to establish a motion schedule relating to any classified information.

The government has endeavored to identify the universe of potentially discoverable classified material and determine its potential applicability, nature, and volume, and will continue in these efforts.   The government will provide an estimate of the time necessary to conduct a complete review of any potentially discoverable classified information.   Based on that estimate, the government will request a schedule for the filing of motions, pursuant to Sections 3 and 4 of CIPA, if necessary, relating to the deletion, substitution, or disclosure pursuant to a protective order of classified information otherwise subject to discovery under the Federal Rules of Criminal Procedure and applicable law.   18 U.S.C. App. 3, § 4.

Because of the classified nature of any such information identified by the government, the government will not be able to describe or discuss the information in open court at the Section 2 conference.   Accordingly, should the government identify potentially discoverable classified information, the government seeks authorization pursuant to Section 4 of

CIPA to make an <u>in camera</u>, <u>ex parte</u> submission regarding classified materials that the government believes should be subject to deletion, substitution, or disclosure pursuant to a protective order.   <u>Id.</u>   As detailed above, courts in this Circuit have consistently held that <u>in camera</u>, <u>ex parte</u> submissions to a district court in matters involving national security are proper. <u>See,</u> <u>supra at pp. 8-9</u>.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court schedule a pretrial conference pursuant to Section 2 of CIPA, either by converting the August 30, 2023 status conference to a CIPA Section 2 status conference or designating the next status conference to be such, at which the Court will establish a motion schedule relating to any classified information.

Dated:      Brooklyn, New York
            August 29, 2023

                                        Respectfully submitted,

                                        BREON PEACE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271-A Cadman Plaza East
                                        Brooklyn, New York 11201

                          By:      _____/s/_____

                                        Francisco J. Navarro
                                        Jonathan P. Lax
                                        Nomi D. Berenson
                                        Robert M. Pollack
                                        Assistant U.S. Attorneys
                                        (718) 254-7000